UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                                             :

WILLIAM L. MCBURNIE,                         :

                                    Plaintiff,      :

                                                            :               14-CV-1388 (JPO)

                             -v-                                        :

                                                               :               <u>OPINION AND ORDER</u>

DANE KELLER RUTLEDGE, ESQ.,            :
MARSH & MCLENNAN COMPANIES, INC., :
MARSH INC., and MARSH USA INC.,          :
                                       Defendants. :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiff William L. McBurnie brings this diversity action against Defendants Dane Keller Rutledge ("Rutledge"), as well as Marsh & McLennan Companies, Inc., Marsh Inc., and Marsh USA Inc. (collectively "Marsh"), alleging various causes of actions stemming from Marsh's agreement to indemnify McBurnie against the costs of defending a criminal prosecution. Rutledge and Marsh now move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6); McBurnie moves for leave to amend the Complaint under Federal Rule of Civil Procedure 15; and Rutledge moves for sanctions under Federal Rule of Civil Procedure 11. For the reasons that follow, Rutledge's and Marsh's motions to dismiss are granted, McBurnie's motion for leave to amend is denied, and decision is reserved on Rutledge's motion for sanctions.

I.  **Background**[1]

From 1997 to 2005, McBurnie worked for Marsh, a global insurance broker. (Dkt. No. 7, First Amended Complaint ¶ 11.[2]) McBurnie worked in Marsh's excess casualty division, which, starting in 2004, became the subject of an investigation by the New York Attorney General ("NYAG"). (¶ 13); *see also Gilman v. Marsh & McLennan Cos.*, No. 10-CV-8158 (JPO), 2015 WL 321827, at *1 (S.D.N.Y. Jan. 26, 2015) (Oetken, J.). The investigation centered on contingent commission practices that the NYAG alleged were in violation of New York State securities and antitrust regulations. (¶¶ 13–14.) McBurnie cooperated with the NYAG investigation and Marsh's internal investigation of the matter. (¶¶ 16–18.) Despite his contention that he had refused to place illegal bids—a contention for which he offered several emails as evidence (¶ 17)—McBurnie was fired on February 8, 2005 (¶ 20).

In early September 2005, McBurnie learned that he was about to be criminally indicted in connection with the NYAG investigation. (¶ 23.) He voluntarily surrendered for arrest and processing on September 15, 2005, the same day his indictment was announced by the NYAG. (¶¶ 24–25.) On October 15, 2005, McBurnie hired Rutledge, his long-time friend, to represent him. (¶ 27.) Pursuant to Marsh's bylaws, Marsh had agreed to indemnify McBurnie against "all expense, liability and loss, (including attorneys' fees, . . .) reasonably incurred or suffered" in connection with his prosecution and to "to pay expenses incurred by McBurnie in defending any such proceeding in advance of its final disposition." (¶¶ 28(a), 28(b) (ellipsis in original; internal quotation marks omitted).) Marsh sent Rutledge an engagement letter that specified that he was being hired to "to protect and vigorously defend Mr. McBurnie's interests," but that he also

---

[1] The following facts, taken from McBurnie's First Amended Complaint, are accepted as true for purposes of the motion to dismiss.

[2] All record citations are to the First Amended Complaint unless otherwise specified.

"owes a concomitant duty to [Marsh]." (¶ 30 (internal quotation marks omitted).) A few months later, because McBurnie was concerned that "the only written agreement . . . addressing Rutledge's representation of McBurnie was not an agreement between Rutledge and McBurnie, but rather was an agreement between Rutledge and McBurnie's indemnitor and former employer, Marsh," McBurnie signed an attorney retainer agreement with Rutledge. (¶¶ 36–37.) At no point did Rutledge explain "the potential for conflicts arising from his dual engagement." (¶ 38.)

Soon after Rutledge was engaged, Marsh became concerned about Rutledge's bills. A Marsh employee emailed McBurnie to note that the invoices Rutledge was submitting made him "higher paid than any of the attorneys [representing other Marsh employees], higher even that the one [Marsh] got for former President and Chief Operating Officer Roger Egan." (¶ 40 (internal brackets omitted).) In December 2006, Rutledge sent Marsh eleven invoices totaling $1,750,973.47 for services rendered between January 2006 and November 2006. (¶ 43.) After some negotiation, Marsh agreed to pay $1,074,993.72, but imposed a $50,000-per-month cap on Rutledge's fees going forward. (¶ 45.)

By late March 2010, Marsh had paid Rutledge a total of around $3,100,000 to represent McBurnie. Still, Rutledge claimed that Marsh owed him an additional $3,200,000 in unpaid invoices. Marsh took umbrage at this amount. It offered, instead, "to approve and process for payment . . . the total aggregate amount of $412,000, provided that it is clearly understood and agreed—in writing—that this payment (and Marsh's prior payments of approximately $3.1 million) are in complete satisfaction of all billings to Mr. McBurnie for fees and disbursements, and all requests for advancement by Mr. McBurnie from Marsh." (¶ 47 (internal quotation mark omitted).) Rutledge and Marsh began to negotiate the outstanding balance. During these negotiations, Marsh insisted that any settlement of the fee dispute with Rutledge would also

3

involve McBurnie's waiver of his right to bring any civil actions against Marsh.  (¶ 50.) McBurnie refused to waive his own right to bring suit against Marsh.  (*Id.*)

In December 2010, Marsh sent Rutledge a draft settlement agreement under which Marsh would agree to pay Rutledge $2,300,000 in full satisfaction of his outstanding demand for legal fees.  (¶ 51.)  But the draft settlement also included a waiver by *McBurnie* of all his potential claims against Marsh.  To this McBurnie "strenuously objected."  (¶ 54.)  McBurnie told Rutledge that he could do one of the following two things: "(i) achieve whatever settlement he could solely for his fees and without any waiver by McBurnie of rights to bring subsequent legal action against Marsh; or (ii) determine what portion of the $2,300,000 settlement amount was for Rutledge's reasonable legal fees and what portion was a settlement with McBurnie for his agreement not to pursue certain civil actions against Marsh."  (¶ 53.)

Ultimately, because he felt that their interests had diverged, McBurnie fired Rutledge in March 2011.  (¶ 64.)  A few months later, Rutledge signed a settlement agreement with Marsh extinguishing his own claims to unpaid fees in exchange for $2,300,000.  McBurnie did not sign the agreement.  The agreement contained the following language regarding McBurnie's claims:

> To the best of his knowledge and belief, Rutledge warrants and agrees that the payment of the Settlement Amount extinguishes any and all past or potential claims that McBurnie has or might make against Marsh & McLennan Companies, Inc, Marsh Inc., Marsh USA, Inc. and each of its and their parents, subsidiaries, affiliates, predecessors, successors and assigns, and its and their current and former directors, insurers, officers, employees, attorneys and agents, and their successors and assigns (the "Marsh Released Parties").  Rutledge represents he has no current authority to act on behalf of McBurnie.

(¶ 60.)

## II.     Discussion

McBurnie brings causes of action for breach of contract and conversion against Marsh and Rutledge, and he alleges a breach of fiduciary duty against Rutledge alone.[3]  Rutledge and Marsh move to dismiss all of the causes of action against them.

### A.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court must accept as true all well-pleaded factual allegations in the complaint, and "draw[] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006) (internal quotation marks omitted).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B.     Rutledge's Motion

Rutledge moves to dismiss all the claims against him.

---

[3] McBurnie also alleges separate causes of action labeled "Breach of Contract—Refund of Legal Fees" (¶¶ 99–109) and "Settlement of Attorney's Fee Award" (¶ 110) against Rutledge.  The second of these claims is not recognized as a cause of action under New York law, but to the extent that it states a claim under New York law, it appears to be duplicative of the claim in conversion.  The first is addressed with McBurnie's ordinary breach of contract claims.

1.      **Breach of Fiduciary Duty**

The thrust of McBurnie's breach of fiduciary duty claim[4] is that Rutledge waived claims that McBurnie had against Marsh in order to secure his own fees, and then kept the balance of the settlement amount that was intended to serve as compensation for the extinguishment of McBurnie's claims. (¶¶ 59, 62.) To plead a cause of action for breach of fiduciary duty, a plaintiff must allege "(1) the existence of a fiduciary relationship, misconduct by the defendant, and (3) damages directly caused by the defendant's misconduct." *Palmetto Partners, L.P. v. AJW Qualified Partners, LLC*, 921 N.Y.S.2d 260, 264 (App. Div. 2d Dep't 2011).

McBurnie's fiduciary duty claim fails for the simple reason that Rutledge *did not* waive any claims McBurnie may have had against Marsh and therefore neither committed misconduct nor caused McBurnie any cognizable damages. The settlement agreement between Marsh and Rutledge made clear that Rutledge "has no current authority to act on behalf of McBurnie." (¶ 60.) At the time Rutledge settled the fee dispute with Marsh, he did not have—and he did not purport to have—any authority to settle any claims between Marsh and McBurnie. McBurnie's rights were unaffected by the settlement agreement between Rutledge and Marsh.

The settlement contract did state that "[t]o the best of his knowledge and belief, Rutledge warrants and agrees that the payment of the Settlement Amount extinguishes any and all past or potential claims that McBurnie has or might make against Marsh . . . ." (¶ 60.) In light of the statement in the next sentence that Rutledge does not have authority to act on McBurnie's behalf, this language seems overbroad and, perhaps, contradictory. As a matter of contract interpretation, the only reasonable construction is that the first sentence—insofar as it could be

---

[4] McBurnie makes several other allegations regarding the $2,300,000 settlement under the heading "Breach of Fiduciary Duty." Because they are conceptually unrelated to the breach of fiduciary duty claim, these allegations are addressed below.

read as a general release of McBurnie's claims against Marsh—is rendered nugatory by the second: the latter explicitly provides that Rutledge "has no current authority to act on behalf of McBurnie," while the former has Rutledge warranting that McBurnie's claims are extinguished, but only "[t]o the best of [Rutledge's] knowledge and belief." (*Id.*) The latter phrase is odd language for a release of claims—unless it is intended to refer only to a release of claims for McBurnie's *legal fees* (and not a general release of his substantive claims against Marsh). In any event, the only claims that Rutledge had authority to settle were his own.

But regardless of what this language means, McBurnie's claim fails: Rutledge did not breach any obligation he had to McBurnie because he did not waive any of McBurnie's claims against Marsh and because McBurnie could not reasonably have believed that Rutledge had waived McBurnie's claims against Marsh. Any allegation to the contrary is implausible for at least three reasons. First, McBurnie did, in fact, bring civil claims in this Court against Marsh and Marsh did not raise the settlement agreement as a defense. *See McBurnie v. Marsh & McLennan Cos., Inc.*, No. 12-CV-3621 (S.D.N.Y. 2012) (Oetken, J.). Second, it is implausible that McBurnie could have believed that the settlement agreement waived his civil claims against Marsh because McBurnie did not even have access to the exact language of the agreement until *after* his claims had already been dismissed without any reference to the settlement agreement. (Dkt. No. 58, Memorandum of Law in Opposition to Marsh's Motion to Dismiss, at 10 n.9 ("McBurnie had no knowledge of the terms of the Settlement Agreement . . . [until] four days *after* [this Court's] memorandum and order dismissing McBurnie's claims for unjust enrichment and *quantum meruit*.) (emphasis in original).) Finally, McBurnie's own declaration shows that he knew that when Rutledge negotiated the settlement with Marsh he did not, in fact, waive any of McBurnie's claims. (*Compare, e.g.*, Dkt. No. 55, Declaration of William McBurnie, Ex. Z (email from McBurnie to Rutledge explaining that Rutledge's fee dispute with Marsh was "not

7

[his] problem"), *with id.* Ex. AD (email from McBurnie to Rutledge explaining that "you settled with Marsh without any form of release from me, just as I said all along you should do and could do. You're welcome.").)

Finally, McBurnie alleges[5] that Rutledge simultaneously represented McBurnie and Marsh and that this "created an inherent conflict of interest." (¶ 89.) This contention is meritless for three reasons. First, Rutledge did not *represent* Marsh. He represented McBurnie and was paid by Marsh. (*E.g.*, ¶¶ 28(a)–(b).) Second, by accepting Rutledge's services, knowing that he was being paid by Marsh, McBurnie waived his right to complain about a conflict of interest. Finally, to the extent that a conflict of interest was created when Rutledge began seeking payment of his own fees rather than advocating on McBurnie's behalf, that conflict was resolved when Rutledge declared that he was no longer representing McBurnie. McBurnie's fiduciary duty claim must be dismissed.

**2. Breach of Contract**

McBurnie alleges that Rutledge breached a contract with him. Under New York law, a breach of contract claim requires proof of "the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach." *Dee v. Rakower*, 976 N.Y.S.2d 470, 474 (App. Div. 2d Dep't 2013).

McBurnie's breach of contract claims center around his belief that at least $1,888,000 worth of the settlement payment was intended to secure *his* release of the various tort claims he was planning on filing against Marsh. This is so, McBurnie argues, because in its initial email to Rutledge, Marsh said that $412,000 was a "reasonable" fee for his work and, therefore, the

[5] McBurnie makes this allegation under the heading "Breach of Contract." (¶ 89.)

remainder of the $2,300,000 payment ($1,888,000) must be for McBurnie. Rutledge, McBurnie claims, therefore breached the agreement when he failed to give McBurnie the remainder. But the settlement agreement did not extinguish any claims that McBurnie may have had against Marsh. It is, therefore, thoroughly clear that the $2,300,000 represented consideration for Rutledge's fees and Rutledge's fees only. That Marsh initially offered $412,000 suggests only that it subsequently engaged in negotiation; it does not plausibly suggest that Marsh believed that $412,000 was the maximum reasonable fee it would ever pay.

McBurnie tries to get around this obvious result in two ways. First, he argues that because he fired Rutledge "for cause," Rutledge was not entitled to any fees. (¶ 94.) Similarly, he argues that because the NYAG investigation ended on November 19, 2009, Rutledge could not have incurred any significant legal fees after that date. But even if it were true that Rutledge was not entitled to any legal fees for his years of work on McBurnie's case—a contention that strains credulity to the breaking point—that does not mean that *McBurnie* is entitled to any portion of the fees. Marsh and Rutledge reached an agreement regarding payment for services that Rutledge provided McBurnie. That the services were not to McBurnie's liking does not mean that he gets to keep the fees Marsh paid for them.[6]

McBurnie finally alleges that Rutledge must refund his fees because Rutledge "overbilled" him. (¶ 100.) But there is nothing to refund because McBurnie did not pay Rutledge. Marsh did. McBurnie's breach-of-contract claim against Marsh also must be dismissed.

---

[6] As is explained below, Marsh has satisfied its obligations to McBurnie.

### 3. Conversion

McBurnie's final claim against Rutledge is for conversion. "The tort of conversion is established when one who owns and has the right to possession of personal property proves that the property is in the unauthorized possession of another who has acted to exclude the rights of the owner." *Republic of Haiti v. Duvalier*, 626 N.Y.S.2d 472, 475 (App. Div. 1st Dep't 1995). McBurnie claims that he has the right to possess the attorney's fees and that Rutledge, therefore, took unauthorized possession of them when he deposited the funds in his bank account.

McBurnie's allegations are based on his argument that attorney's fees belong to the client, not to the lawyer. (Dkt. No. 56, Memorandum of Law in Opposition to Rutledge's Motion to Dismiss, at 17.) McBurnie cites several statutory fee-shifting cases in support of this proposition. (*Id.* (citing, *inter alia*, *Brown v. Gen. Motors Corp.*, 722 F.2d 1009, 1011 (2d Cir. 1983)).) But none of these cases stands for the illogical proposition that McBurnie has the right to receive five years' worth of legal representation *and* keep the fees that his employer paid the lawyer for that representation. McBurnie is correct that his employment with Marsh entitled him to attorney's fees. But once he accepted services, paid for by Marsh—and he does not contend these services were inadequate to satisfy Marsh's obligation—he was not entitled to a windfall from allegedly excessive attorneys' fees.

Finally, McBurnie adds an allegation that "Rutledge misappropriated McBurnie's funds, commingled McBurnie's funds with his own personal funds, failed to notify McBurnie of his receipt of McBurnie's funds, failed to pay or deliver McBurnie's funds to McBurnie, and converted those funds to his own personal use, in violation of [New York] Disciplinary Rules 9-102(A), (B) and (C)(1) and (4)." (¶ 85.) This boilerplate allegation fails because the funds were not McBurnie's. Marsh was obliged only to pay McBurnie's legal expenses in connection with

the criminal prosecution (*e.g.*, ¶ 28(a)–(b)); it was not obligated to pay him after providing him legal representation. McBurnie's conversion claim against Rutledge must be dismissed.

### C. Marsh's Motion

Marsh moves to dismiss the breach of contract and conversion claims asserted against it.

#### 1. Breach of Contract

McBurnie's breach of contract claim against Marsh stems from his contention that "[u]nder the Settlement Agreement, McBurnie was to be compensated in the amount of $2,300,000.00 in exchange for his agreement not to bring future claims against Marsh." (¶ 79.) McBurnie therefore claims that Marsh breached the agreement—of which McBurnie was "an intended third-party beneficiary" (¶ 83)—when it paid Rutledge instead of McBurnie. This claim is meritless because the agreement was intended to settle Rutledge's dispute with Marsh. The agreement explicitly said that Rutledge was not acting on McBurnie's behalf. To the extent that part of the settlement agreement purports to settle McBurnie's claims, that part is rendered nugatory by Rutledge's explicit disclaimer of any ability to act on McBurnie's behalf. Regardless of the statements concerning McBurnie's claims against Marsh, the agreement explicitly disclaimed any ability to bind McBurnie. Indeed, McBurnie's own declaration makes clear that he knew this was the case. (Dkt. No. 55, Declaration of William McBurnie, Ex. AD (email from McBurnie to Rutledge explaining that "you settled with Marsh without any form of release from me, just as I said all along you should do and could do. You're welcome.").)

McBurnie also argues that Marsh breached its obligations to him by failing to pay *him* the attorney's fees that he alleges rightfully belonged to him. This claim is meritless because Marsh satisfied its obligation to indemnify McBurnie by assuring that he did not incur any personal liability in connection with his criminal prosecution. McBurnie's breach of contract claim against Marsh is dismissed.

### 2. Conversion

McBurnie's conversion claim against Marsh fails for the same reason that his conversion claim against McBurnie does: he does not have any right to possession of the $2,300,000 settlement payment.  McBurnie's conversion claim against Marsh is dismissed.

### D. Leave to Amend

McBurnie seeks leave to amend his Complaint in order to add many new causes of action.  The vast majority of proposed amendments essentially rehash McBurnie's earlier claims in the guise of new causes of action.  Leave to amend is denied with respect to those claims because, as the foregoing discussion of McBurnie's Complaint makes clear, the claims are meritless and the proposed amendment therefore futile.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) ("Leave may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." (internal quotation marks omitted)).

McBurnie's proposed amendments add an allegation that Rutledge revealed confidential information to Marsh in connection with the fee dispute.  (Dkt. No. 39, Ex. A, Proposed Amended Complaint ¶¶ 233–39.)  But these allegations are insufficient to survive a motion to dismiss.  They do not specify what information was revealed.  Indeed, they do little more than declare that Rutledge revealed confidential information.  Even if the allegations are true, they ultimately fail to state a claim because, although the proposed amended complaint baldly declares that "[a]s a result of Rutledge's breach of fiduciary duty, McBurnie's claims against Marsh, existing and potential, were settled for $2,300,000.00" (*id.* ¶ 245), the fact remains that McBurnie's claims *were not* waived by the settlement agreement.

### E. Sanctions

Decision is reserved on Rutledge's motion for sanctions. The Court will hear argument on that motion on March 20, 2015, at 10:30 a.m.

### III. Conclusion

For the foregoing reasons, Marsh's and Rutledge's motions to dismiss are GRANTED. McBurnie's request for leave to amend is DENIED.

Counsel for Rutledge and McBurnie shall appear for a hearing on Rutledge's motion for sanctions on March 20, 2015, at 10:30 a.m. in Courtroom 706 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York.

The Clerk of the Court is directed to close the motions at docket numbers 38, 42, and 49.

SO ORDERED.

Dated: February 19, 2015
New York, New York

_____
J. PAUL OETKEN
United States District Judge